FILED '06 APR 07 16:03USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                                05-CR-404

                     Plaintiff,                          OPINION AND ORDER

v.

ADONIS LATRELL HURD,

                     Defendant.


**KARIN J. IMMERGUT**
United States Attorney
**JOHN C. LAING**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
(503) 727-1055

          Attorneys for Plaintiff

1  -  OPINION AND ORDER

**STEVEN T. WAX**
Federal Public Defender
**STEPHEN S. SADY**
Chief Deputy                    ********
101 S.W. Main Street, Suite 1700
Portland, OR  97204
(503) 326-2123

                    Attorneys for Defendant


**BROWN, Judge.**

        This matter comes before the Court on the Motion to Suppress
(#13) of Defendant Adonis Latrell Hurd.  Defendant seeks to
suppress all evidence seized during or derived from the search of
his residence pursuant to a Search Warrant that lacked the
authorizing magistrate's initials next to the paragraph that
identified the residence as a place to be searched.

        Following an evidentiary hearing on April 3, 2006, the Court
took the Motion under advisement.  For the reasons that follow,
the Court **DENIES** Defendant's Motion to Suppress.


                        **FINDINGS OF FACT**

        At the evidentiary hearing, the Court heard the testimony of
Portland Police Officer Brad E. Clifton, Multnomah County
(Oregon) Circuit Judge Paula J. Kurshner (by telephone), and
Defendant Adonis Latrell Hurd.  The Court finds all of the
witnesses testified truthfully to the extent their memories
permitted.

2  -  OPINION AND ORDER

After weighing the testimony of the witnesses, considering the exhibits received into evidence, and drawing reasonable inferences from the evidence, the Court finds the following facts by a preponderance of the evidence:

1.    In the course of a drug investigation, Officer Clifton developed what he believed to be probable cause to search the person, residence, and vehicle of Defendant for evidence of the crime of delivery of a controlled substance (cocaine) in violation of Oregon law.  Officer Clifton reviewed the results of the investigation with a police supervisor and a deputy district attorney, who both agreed Officer Clifton had accumulated sufficient information to support a warrant to search the Defendant, his residence, and his vehicle for evidence of the suspected criminal activity.

2.    Officer Clifton prepared an Affidavit in Support of a Search Warrant in which he specified the facts developed in the investigation.  Officer Clifton ended the Affidavit with a request that a warrant issue for the search of the person, residence, and vehicle of Defendant.

3.    Officer Clifton also prepared a proposed form of search warrant that described with particularity the person and places to be searched and the things to be seized.  He found the format for the warrant in a police computer database among other search-warrant forms.  Officer Clifton was not particularly familiar

with this form of search warrant, and, in general, it is not frequently used.

4.    The format was captioned as follows:

SEARCH WARRANT

MULTNOMAH COUNTY

IN THE NAME OF THE STATE OF OREGON TO ANY POLICE OFFICER:

YOU ARE HEREBY COMMANDED TO SEARCH

5.    Three paragraphs followed this caption.  Each paragraph specified a different place to be searched:  The first described the person of "Adonis Latrelle Hurd"; the second gave a particularized description of the residence at "3644 Southeast 88th Avenue[,] apartment A"; and the third described Defendant's vehicle.  The word "And" was set out prominently and center-spaced between the first and second paragraphs and between the second and third paragraphs.  Finally, the format contained a short, blank line of approximately seven spaces on the left margin and at the beginning of each of these three paragraphs.

6.    Following these three paragraphs was the word "For" and a detailed description of the things to be seized.

7.    The last paragraph of the form contained a proposed authorization that the search warrant "may be executed more than five (5) days but not more than ten (10) days from its issuance." A blank space within parenthesis - "( )" - preceded this statement.

4   -   OPINION AND ORDER

8.   The form concluded with a sentence containing blanks for the date and time the warrant issued and, of course, a signature line for the authorizing magistrate.

9.   On September 9, 2005, at approximately 5:20 p.m., Officer Clifton presented his Affidavit and this form of search warrant to Multnomah County Circuit Judge Paula J. Kurshner at her residence.   Judge Kurshner placed Officer Clifton under oath, reviewed the contents of the Affidavit with Officer Clifton, obtained Officer Clifton's signature on the Affidavit to signify his affirmation of the truth of its contents, and subscribed Officer Clifton's signature at 5:35 p.m. on September 9, 2005. Judge Kurshner also discussed with Officer Clifton his request for a ten-day period in which to serve the warrant.

10.   Judge Kurshner indicated to Officer Clifton her assessment that his warrant request was "fine" (or words to that effect), signed her name at the end of the Search Warrant on the "Signature-of-Judge" line, and noted the date and time as "September 9, 2005 at 5:36 p.m."  Based on Judge Kurshner's statement to Officer Clifton and the fact that she signed the Search Warrant, the Court concludes Judge Kurshner found Officer Clifton's Affidavit established probable cause to support the

5  -  OPINION AND ORDER

requested Search Warrant in all respects.[1]

11.    In addition to signing the Search Warrant, Judge
Kurshner placed her initials on the blank lines at the beginning
of the first and third paragraphs before the descriptions of the
person and vehicle respectively and placed an "x" in the space
provided before the line authorizing a 10-day period within which
to serve the warrant.  Judge Kurshner, however, did not initial
the blank at the beginning of the second paragraph describing the
residence to be searched.  Even though Judge Kurshner intended
her signature, initials, and "x" to signify her authorization to
conduct the requested search, she did not intend to signify any
disapproval of the request to search the residence by failing to
place her initials next to the second paragraph.

The Court concludes the absence of Judge Kurshner's initials
next to that paragraph was, in all likelihood, inadvertent.  If
Judge Kurshner had decided not to authorize a search of the
residence, she would have articulated such disapproval
affirmatively to Officer Clifton and either would have written
the word "no" next to the second paragraph or crossed out the
paragraph.

---

[1] This Court also finds Officer Clifton's Affidavit
sufficiently established probable cause to justify the requested
Search Warrant for the person, residence, and vehicle of
Defendant, who does not argue otherwise.

6  -  OPINION AND ORDER

12.   On September 15, 2005, police officers stopped and searched Defendant and his vehicle.  Officer Clifton read the entire Search Warrant to Defendant.  Officer Clifton did not notice the absence of Judge Kurshner's initials at that time. When Defendant personally reviewed the warrant after the search, however, he immediately noticed the absence of initials.

13.   After arresting Defendant, Officer Clifton and other police officers made forceful entry into the residence described in the second paragraph of the Search Warrant for the purpose of executing the Search Warrant.  When an occupant of the residence appeared, Officer Clifton read the entire Search Warrant to her as well.  Again, Officer Clifton did not notice the absence of Judge Kurshner's initials next to the second paragraph.

14.   In the course of the search of the residence, the officers seized various items of evidence as described in the Search Warrant, including cocaine and United States currency.

15.   On September 16, 2005, Officer Clifton presented his "Return of Search Warrant" to another judge, Douglas G. Beckman, in Judge Kurshner's absence.  Included in Officer Clifton's Return is his sworn statement that he and other officers "executed the attached warrant on 3644 Southeast 88th Avenue Apt. A Portland, Multnomah County, Oregon at about 1720 hours on September 15, 2005."

16.   Officer Clifton did not notice the absence of Judge

Kurshner's initials next to the second paragraph until it was
brought to his attention in connection with Defendant's Motion to
Suppress.  At all times leading up to the execution of the Search
Warrant at the residence, Officer Clifton understood he had
requested and received from Judge Kurshner a Search Warrant that
authorized the search of the person, residence, and vehicle of
Defendant.

17.    The absence of Judge Kurshner's initials next to the
second paragraph is obvious from an objective review of the face
of the Search Warrant.  When the Court takes into account the
totality of the circumstances known to Officer Clifton at the
time he executed the Search Warrant at the residence, however,
the Court concludes it was objectively reasonable for Officer
Clifton to believe that he was acting pursuant to a sufficient
search warrant for the residence properly authorized by a
magistrate.  These circumstances include the approvals that
Officer Clifton previously received from his supervisor and a
prosecutor to proceed with a request to search the residence, the
nature of Officer Clifton's interaction with Judge Kurshner, her
affirmative statement that Officer Clifton's warrant request was
"fine," the absence of any indication to Officer Clifton by Judge
Kurshner that she was denying or even questioning the request for
authorization to search the residence, and the fact that Officer
Clifton affirmatively disclosed in his Return of Service the

search of the residence and its results.

## DEFENDANT'S MOTION TO SUPPRESS

According to Defendant, the Search Warrant as issued authorized "only a search of his person and a vehicle, not the residence."  In other words, Defendant contends Officer Clifton conducted a warrantless search of Defendant's residence in violation of the Fourth Amendment, and, therefore, the results of that search must be suppressed.

On the other hand, the government asserts Judge Kurshner's failure to initial the paragraph of the warrant specifying the residence was merely inadvertent, Officer Clifton acted in an objectively reasonable manner and with a good faith belief that the Search Warrant he executed authorized the search of Defendant's residence, and there is not any justification to suppress the results of the search of the residence.

### Standards

It is well-settled that a warrantless search and seizure inside a residence is presumptively unreasonable.  *Groh v. Ramirez*, 540 U.S. 551, 559 (2004).  Moreover, a search pursuant to a constitutionally insufficient search warrant may be deemed to be a "warrantless" search.  For example, a search pursuant to a warrant that fails to describe all of the things to be seized is invalid on its face, and the search is considered to

9  -  OPINION AND ORDER

be warrantless for purposes of the Fourth Amendment.  *Id.*  In
addition, it is unreasonable for a police officer to rely on a
warrant that is patently defective even when the issuing
magistrate is aware of the deficiency.  *Id.* at n.4 (citing *United
States v. Leon*, 468 U.S. 897, 915, 922 n.23, (1984)).

On the other hand, when an issuing magistrate makes "an
error of a constitutional dimension" by failing to take the steps
necessary to conform a search warrant to constitutional
requirements after assuring police officers that such steps would
be taken, it is not unreasonable for the officers to rely on the
magistrate's assurances "that the warrant authorized the search
they had requested."  *Id.* (citing *Massachusetts v. Sheppard*, 468
U.S. 981, 990 n.6 (1984)).

When evidence is seized pursuant to a defective search
warrant, however, suppression under the exclusionary rule is not
automatic.  As the Ninth Circuit recently noted:

> The "prime purpose of the exclusionary rule is to deter
> future unlawful police conduct and thereby effectuate
> the guarantee of the Fourth Amendment against
> unreasonable searches and seizures." *Illinois v.
> Krull*, 480 U.S. 340, 347, 107 S. Ct. 1160, 94 L. Ed.2d
> 364 (1987)(internal quotation marks omitted).  The
> Supreme Court has instructed:
>
>> As with any remedial device, application of the
>> exclusionary rule properly has been restricted to
>> those situations in which its remedial purpose is
>> effectively advanced. Thus, in various circum-
>> stances, the Court has examined whether the rule's
>> deterrent effect will be achieved, and has weighed
>> the likelihood of such deterrence against the
>> costs of withholding reliable information from the

truth-seeking process.

*Id.* In the interest of deterrence, "evidence should
be suppressed 'only if it can be said that the law
enforcement officer had knowledge, or may properly be
charged with knowledge, that the search was
unconstitutional under the Fourth Amendment.'" *Id.* at
348-49, 107 S. Ct. 1160 (quoting *United States v.
Peltier*, 422 U.S. 531, 542, 95 S. Ct. 2313, 45 L. Ed.2d
374 (1975)); see also *United States v. Leon*, 468 U.S.
897, 918, 104 S. Ct. 3405, 82 L. Ed.2d 677 (1984)
("[S]uppression of evidence obtained pursuant to a
warrant should be ordered only on a case-by-case basis
and only in those unusual cases in which exclusion will
further the purposes of the exclusionary rule.").

Based on the Supreme Court's decision in *Krull*, we have
set forth three factors that determine whether the
exclusionary rule should be applied in a particular
case:  (1) whether suppression would affect the group
conduct that the exclusionary rule was designed to
punish, i.e., police misconduct; (2) the source of the
error in the particular case and whether any evidence
suggested that the source, e.g., issuing magistrates,
was inclined to ignore or subvert the Fourth Amendment;
and (3) the basis for believing the exclusion of
evidence will have a significant deterrent effect upon
the source of the error. *United States v. Luk*, 859
F.2d 667, 676 (9th Cir. 1988).

*United States v. Sears*, 411 F.3d 1124, 1128 (9ᵗʰ Cir. 2005).

## Discussion

In this case, the magistrate who signed the Search Warrant

placed her initials next to only two of the three paragraphs in

the Search Warrant that particularly described the person,

residence, and vehicle to be searched.  Because the magistrate

did not initial the paragraph in the Search Warrant that

described Defendant's residence, Defendant argues the Search

Warrant did not authorize the search of the residence.  Defendant

11 -   OPINION AND ORDER

relies on *Groh v. Ramirez* and contends the search of the residence violated the Fourth Amendment because it was "warrantless" and presumptively unreasonable.  Defendant also argues suppression is required because the government cannot show Officer Clifton's reliance on the Search Warrant was objectively reasonable under *United States v. Leon*.

The government asserts the magistrate's error does not justify suppression and relies on *Massachusetts v. Sheppard*, 468 U.S. 981 (1984), and *United States v. Leon* to support its position.  At the conclusion of the evidentiary hearing, the government also argued the magistrate's initials were, in effect, "surplusage," and, therefore, there is not any basis to find the search was not authorized by a sufficient Search Warrant.

The Supreme Court's decisions in *Groh v. Ramirez* and *Massachusetts v. Sheppard* do not explicitly resolve the issue in this case.  *Groh* involved a warrant that obviously fell short of the Fourth Amendment's particularity requirement.  Here the Search Warrant does not suffer from that kind of defect.  Although *Sheppard* involved a magistrate's error, the circumstances were quite different from those in this case.  In *Sheppard*, both the requesting officer and the magistrate were aware of insufficiencies in the warrant documents, the magistrate assured the officer that the documents would be corrected to conform to constitutional requirements but then failed to make

12 -  OPINION AND ORDER

the corrections, and the officer proceeded with the search in reliance on the magistrate's assurances.  Here neither the officer nor the magistrate were aware that the magistrate neglected to initial the second paragraph of the Search Warrant before the officer relied on the Search Warrant to search Defendant's residence.

The Court has not found any case in the Ninth Circuit or elsewhere, and the parties have not cited any, that analyzes Fourth Amendment issues arising when a magistrate issues an otherwise valid search warrant and adds her initials to some, but not all, of the authorizing paragraphs of the warrant.  In somewhat analogous circumstances, however, other courts have denied suppression when a failure-to-sign error was made by the magistrate rather than the officer and it was reasonable for the officer to believe the search had been authorized pursuant to a search warrant.  For example, in *United States v. Henderson*, a case decided after *Groh v. Ramirez*, the district court denied a motion to suppress based on *United States v. Leon*.  No. CR-05-0078-LRR, 2005 WL 326391 (N.D. Iowa Nov. 30, 2005).  In *Henderson*, the issuing magistrate inadvertently failed to sign a search-warrant application in one of two places designated for her signature and thus failed to confirm the affiant had been placed under oath.  The district court adopted findings that the affiant actually was placed under oath; the search warrant was

valid; and, based on *Massachusetts v. Sheppard*, it was reasonable for the officer to rely on the magistrate's "assurance that the warrant was sufficient for the requested search."  *Id.*, at *4.

The Fifth Circuit in *United States v. Kelley* also affirmed the denial of a motion to suppress arising from a search based on a warrant that the magistrate inadvertently failed to date and to sign.  140 F.3d 596 (5th Cir. 1998).  Based on *United States v. Leon*, the court concluded it was objectively reasonable for the officer to act on the warrant because the magistrate answered affirmatively when the officer asked whether all of the necessary steps for securing the warrant had been taken.  *Id.* at 602-03.

In any event, this Court need not determine whether the magistrate's failure-to-initial oversight in this case renders the Search Warrant invalid as to Defendant's residence because the Court finds suppression is not warranted under the three-factor test set forth in *United States v. Luk*, 859 F.2d at 676. The first factor weighs against suppression.  Although suppression in this instance certainly would affect police conduct, there is not any "police misconduct" in this case to punish.  Thus, the purpose of the exclusionary rule would not be advanced.

14 -   OPINION AND ORDER

The second factor also weighs against suppression.  There is
not any evidence in this case that the issuing magistrate "was
inclined to ignore or subvert the Fourth Amendment" or that the
police officer had any part in the magistrate's failure-to-
initial error except his failure to notice that it occurred.  As
noted, however, this Court has found it was objectively
reasonable under all of the circumstances known to Officer
Clifton at the time he executed the Search Warrant at the
residence to believe he was authorized to serve the Search
Warrant, to conduct the search of the residence, and to seize the
identified evidence.

Finally, the third *Luk* factor also weighs against
suppression because there is not any basis to believe that
exclusion of evidence in this case will have a significant
deterrent effect on the source of the error or, indeed, that
there is any need for the issuing magistrate to be so deterred.
In addition, there is not any need to deter police from future
"misuse" of this form of search warrant because the form is not
used frequently.

Accordingly, the Court concludes there is not any basis to
suppress the evidence seized during or derived from the search of
Defendant's residence pursuant to the Search Warrant.

15 -  OPINION AND ORDER

## Conclusion

For these reasons, the Court **DENIES** the Motion to Suppress (#13) of Defendant Adonis Latrell Hurd.

IT IS SO ORDERED.

DATED this 7th day of April, 2006.


_____
ANNA J. BROWN
United States District Judge